IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EVAN LOFTON,

Plaintiff,

v.

PANASONIC PENSION PLAN,

Defendant.

No. 10 C 3909

Judge Virginia M. Kendall

**MEMORANDUM OPINION AND ORDER**

Plaintiff Evan Lofton ("Lofton") brought a single count action against Defendant Panasonic Pension Plan (the "Plan") alleging that the Plan wrongly denied Lofton's claim for pension benefits in violation of Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132(a)(1)(B). The Plan has moved for summary judgment. It asserts that Lofton's claims are barred by the statute of limitations and the doctrine of laches. The Plan also asserts that judgment should be entered in its favor because the Plan's decision to deny Lofton's claim for additional benefits was not arbitrary and capricious. For the reasons set forth below, the Court grants the Plan's motion and enters judgment in its favor.

**STATEMENT OF UNDISPUTED MATERIAL FACTS[1]**

Matsushita Industrial Company employed Lofton from March 10, 1976 until June 13, 1988. (Doc. 56, Def. 56.1, ¶¶ 1-2.) As a Matsushita employee, Lofton participated in the Matsushita Industrial Company Retirement Security Plan (the "MIC Plan"). (*Id.* at ¶ 3.) The MIC Plan merged

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to the Plan's Statement of Uncontested Facts have been abbreviated to "Def. 56.1 ¶ or Ex. __, p. __."; and citations to Lofton's Response to the Plan's L.R. 56.1 Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."

with the Plan in 1988. (*Id.* at ¶ 4.) The version of the MIC Plant in effect on the date that Lofton's employment ended was the MIC Plan as restated effective April 2, 1984 and subsequently amended in 1985 (the "1984 Plan"). (*Id.* at ¶¶ 8-9.) The 1984 Plan governed Lofton's entitlement to benefits under the MIC Plan. (*Id.* at ¶ 10.)

**I. The 1988 Payout of Lofton's Benefits Under the Plan**

Lofton's personal contributions to the Plan plus interest through December 31, 1987 were $2,422.74. (*Id.* at ¶ 13.) Upon termination of her employment with Matsushita, Lofton signed a form entitled "Matsushita Industrial Company RSP Request for Payment of Benefits." (*Id.* at ¶ 11.)[2] The Request for Payment of Benefits sheet provided Lofton with five options for the method by which she wished to receive benefits she was entitled to under the Plan. (*Id.*; Plan 004). One of these options was for a lump-sum cash amount, which was equivalent to the actuarial value of her retirement income. (*Id.*) A second option was for the refund of contributions plus interest thereon. (*Id.*) This refund would be for the employee's portion of contributions, Matsushita's contributions would remain in the RSP until Lofton was eligible for normal retirement. (*Id.*) Lofton selected the refund of contributions plus interest option. (Def. 56.1, ¶ 20.)

[2]The Court notes that Lofton has failed to comply Local Rule 56.1. In response to the Plan's statement of undisputed facts, she frequently dispute the Plan's statement of facts by either introducing new facts that do not directly refute the assertions stated or by citing to a seven-paragraph declaration that was executed by Lofton after the close of discovery. This declaration contains a series of conclusory statements that do not rely on any evidentiary support. Indeed, a number of these assertions are contradicted by the evidence offered by the Plan in support of its Motion. Such an affidavit does not preclude the entry of summary judgment. *See Keri v. Bd. of Trustees of Purdue University,* 458 F.3d 620, 628 (7th Cir. 2006) ("conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment"); *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 925 (7th Cir. 2004) ("Self-serving statements in affidavits without factual support in the record carry no weight."). This Court is afforded great discretion in fashioning a penalty for a litigant's non-compliance with Local Rule 56.1. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005). The court's decision to disregard additional "facts" a litigant has proposed is an appropriate penalty. *See id.* Accordingly, this Court will not consider the "facts" set forth in Lofton's self-serving, conclusory affidavit.

In order to effectuate the Request for Payment of Benefits, the Plan prepared a benefit estimate work sheet to determine the benefits to which Lofton was entitled under the 1984 Plan. (*Id.* at ¶ 14.) This estimate found that the value of Lofton's entire vested benefit as of August 1, 1988 was $2,572.69. (*Id.* at ¶¶ 16-18.) Lofton concedes that the Plan's calculation of her vested benefit as of August 1, 1988 was correct. (*Id.* at ¶ 55.)

Section 7.10 of the 1984 Plan states that:

> Nowithstanding a Participant's election to the contrary or any other provision of this Plan, if the Actuarial Equivalent single sum value of such Participant's Retirement Benefit...under this Plan is not greater than $3,500, the actuarial value of such Retirement Benefit...shall be paid in one or more payments within a single calendar year in full and final satisfaction thereof..."

(*Id.* at ¶ 19.) Since the Plan calculated Lofton's total vested benefit to be $2,572.69, *i.e.,* less than $3,500, it paid her in a single lump-sum payment of her total vested benefit despite the fact she had elected to only receive a refund of her contributions to the Plan plus interest. (*Id.* at ¶ 20.) Accordingly, the Plan sent Lofton a check for $2,543.58[3] and a letter on August 1, 1988 via certified mail. (*Id.* at ¶ 21.) The letter stated in relevant part that:

> Upon termination of your employment with Matsushita Industrial Company you were eligible for a vested benefit from the Retirement Security Plan (RSP). Payment of this vested benefit normally begins at age 65. However, the RSP Advisory Committee has approved a policy which affects those terminations eligible for a small vested benefit. This policy directs payment, in a single lump-sum distribution, of the present value of your vested benefit if this present value is less than $3,500.
>
> We have determined that the present value of your vested benefit is less than $3,500. Hence, the enclosed check in the amount of $2,543.58 represents a refund of your contributions plus interest from RSP, as you requested in your Direction of Payment, and a distribution of the present value of your vested benefits as approved by the Advisory Committee.

---

[3] The $29.11 difference between the calculated amount of $2,572.69 and the amount that was actually distributed was due to withholding for payment of federal taxes.

(*Id.* at ¶ 22.)

Lofton received both the August 1, 1988 letter and the $2,543.58 payment in August 1988. (*Id.* at ¶ 23.) She deposited the check shortly after she received it. (*Id.*) This payment was a refund of all of Lofton's contributions to the Plan plus interest through her August 1, 1988 distribution date. (*Id.* at ¶ 24.) It was also a distribution of her entire vested benefit because her contributions would have been sufficient to fund the annual annuity provided for by the Plan as of her normal retirement date of July 1, 2017. (*Id.*)

## II. The 1990 Supplemental Distribution of Benefits to Lofton from the Plan

On or around February 13, 1990, the Plan sent a letter to Lofton that stated in relevant part:

> According to our records, you received a distribution from RSP during 1988. Federal regulations were finalized in 1989 with respect to the calculation of your distribution. As a result of these finalized regulations, we have determined that you are entitled to an additional distribution from RSP. Because your additional RSP distribution does not exceed $3,500, you will be paid a single sum payment as soon as practicable.

(*Id.* at ¶ 25.) The Plan prepared another benefit estimate work sheet for Lofton in which it recalculated that the present value of Lofton's unpaid vested benefit under the Plan on April 1, 1990 would have been $6,381.54 if Lofton had not received the $2,572.69 distribution in 1988. (*Id.* at ¶ 26.) The Plan then paid Lofton the $3,427.96 remainder of the vested benefit.[4] (*Id.* at ¶¶ 26-27.) Lofton disputes receiving any communications from the Plan about the recalculation of the vested benefit; however, she does not dispute that she received a second distribution from the Plan. (Doc. 58, Pl. 56.1 Resp., ¶¶ 26-27.) These two distributions comprised Lofton's entire vested benefit under the Plan. (Doc. 56, Def. 56.1, ¶ 29.)

---

[4]The present value of Lofton's unpaid vested benefit in 1990 was $3,808.85. That amount was reduced by $380.89 for applicable tax withholdings. (Def. 56.1, ¶ 28.)

## III. The 2008 Evaluation and Denial of Lofton's Claim for Additional Benefits

In or about April 2008, Lofton contacted the Plan to inquire about her benefit entitlement. (*Id.* at ¶ 33.) On May 21, 2008, the Plan responded and informed Lofton that all benefits due to her under the Plan were previously paid and that she was not due any other benefits. (*Id.* at ¶ 34.) On May 31, 2008, Lofton sent another letter to the Plan in which she again requested pension benefits. (*Id.* at ¶ 35.) The Plan responded in July 2008. It told Lofton that it maintained its original decision; however, it would submit her claim to the Plan's Administrative Committee for review. (*Id.* at ¶ 37.) In August 2008, the Plan asked Lofton to send it any written documentation that she had that supported her claim for benefits. (*Id.* at ¶ 38.)

Section 8.01 of the Plan provides that the Panasonic Corporation of North America is the Plan administrator. (*Id.* at ¶ 43.) This section also provides that Panasonic has "the power to interpret or construe the Plan" and "to decide any dispute arising hereunder to the extent discretion on such issue is not delegated to the Committee under the Plan." (*Id.*) Section 8.02 provides that Panasonic's Board of Directors shall appoint a committee (the "Administrative Committee") with "power to interpret or construe the Plan in order to decide any disputes arising hereunder." (*Id.* at ¶ 44.) It further provides that "[i]n exercising its authority to interpret the Plan, the Committee shall have the maximum discretion allowed by law."[5] (*Id.*)

The Administrative Committee met on October 8, 2008 to review Lofton's claim. (*Id.* at ¶ 46.) At that meeting, Robert Ohme, the Group Manager for Retirement Plans Administration for

---

[5]The Plan asserted that it should follow the procedures for claims review that are delineated in the most recent version of the Plan. (*Id.* at ¶ 42.) Lofton disputed this assertion but failed to provide any support for her position. (Doc. 58, Pl. 56.1 Resp., ¶ 42.) Accordingly, the Court accepts the Plan's statement as true. Even if were not, Lofton does not dispute that the procedures for claims review in the 1984 Plan is similar to those set forth in the most recent version of the Plan. (Doc. 58, Pl. 56.1 Resp., ¶ 45.) Accordingly, any dispute over the claims review procedure is immaterial.

Panasonic, and Sue McElroy, the Senior Supervisor for Retirement Plans Administration for Panasonic, presented Lofton's benefit denial appeal. (*Id.* at ¶ 47.) They told the Administrative Committee that the Plan's records indicated that Lofton had already been paid out her accrued benefits under the Plan but that Lofton believed that she was entitled to a deferred benefit. (*Id.*) After considering Lofton's claim, including all of the documents submitted by Lofton and the Plan's own records (the "Administrative Record"), the Administrative Committee denied Lofton's claim. (*Id.* at ¶ 48.) The Administrative Committee's review of Lofton's claim was carried out according to the procedure dictated by the applicable plan provisions. (*Id.* at ¶ 51.)

On October 24, 2008, the Plan provided Lofton formal notice that her appeal was denied. (*Id.* at ¶ 50.) The notice explained why Lofton was not entitled to additional benefits and the specific reasons why her appeal was denied. (*Id.*) Prior to the Administrative Committee reaching its decision, Lofton never told the MIC Retirement Security Plan, the Plan or the Administrative Committee that the August 1, 1988 Calculation of the present value of her vested benefit was inaccurate. (*Id.* at ¶ 54.) She never told them that the August 1, 1988 payment to her of the present value of her vested benefit in a single-lump sum distribution was improper. (*Id.*) Lofton does not dispute that the August 1, 1988 calculation of the present value of her vested benefit was accurate. (*Id.* at ¶ 55.) She also does not dispute that the calculation of the April 2, 1990 payment of $3,427.96 was accurate. (*Id.* at ¶ 56.) Finally, Lofton never told the MIC Retirement Security Plan, the Plan or the Administrative Committee that the April 2, 1990 $3,427.96 payment was improper. (*Id.* at ¶ 57.)

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); s*ee also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). The non-moving party, therefore, cannot rely on mere conclusions and allegations to create factual issues. *Bladerston v. Fairbanks Morse Engine Div. Of Coltec Ind.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)).

## DISCUSSION

The Plan raises two primary arguments for why the Court should grant its motion for summary judgment. First, it argues that Lofton's claim is untimely because it was not brought within the ten-year statute of limitations for ERISA benefit claims brought in Illinois. Second, it argues that judgment should be entered in its favor because the Administrative Committee's decision to deny her claim was not arbitrary and capricious.[6] Both of these arguments are correct and warrant entry of judgment in favor of the Plan.

### I. The Statute of Limitations

As described above, Lofton brought her claim for denial of benefits pursuant to Section 502(a)(1)(B) of ERISA. Because ERISA does not provide a limitations period for actions brought under § 502, courts borrow the most analogous statute of limitations from the state with the most significant connections to the dispute. *See Berger v. AXA Network LLC,* 459 F.3d 804, 808 (7th Cir. 2006); *Young v. Verizon's Bell Atl. Cash Balance Plan,* 615 F.3d 808, 813 (7th Cir. 2010).

Lofton worked for Matsushita in Illinois and remains an Illinois resident. (Def. 56.1, ¶ 1-2.) In addition, certain of the events relevant to this action took place in Illinois. (*Id.*) Accordingly, the most analogous statute of limitations in this case is Illinois's ten-year statute of limitations period for written contracts. *See Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65

[6] The Plan also raised an argument that Lofton's claim is barred by the doctrine of laches. However, this defense is simply derivative of the statute of limitations defense in this case. In cases where a federal statute does not contain an express statute of limitations and instead borrows from state statutes, such as in an ERISA case, the analogous state limitations period serves a baseline for a presumption of laches. *See Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 821 (7th Cir. 1999); *Samaritan Health Ctr. v. Simplicity Health Care Plan,* 516 F. Supp. 2d 939, 945-46 (E.D. Wis. 2007). "This baseline principle presumes that an action is not barred [by the doctrine of laches] if brought within the state limitations period." *Samaritan Health Ctr.,* 516 F. Supp. 2d at 946 (citing *Hot Wax, Inc.,* 191 F.3d at 821-22). Here, if Lofton's cause of action accrued when the Plan contends, it will be barred by the statute of limitations. If Lofton's cause of action accrued when she contends, she will have brought it within the statute of limitations and it will not be barred by the doctrine of laches. Accordingly, the laches defense is redundant of the statute of limitations defense in this case.

(7th Cir. 1996) (stating that Illinois's statute of limitations for written contracts applied to claim brought pursuant to Section 502(a)(1)(B) of ERISA); *Jenkins v. Local 705 Intern. Broth. of Teamsters Pension Plan,* 713 F.2d 247, 253-54 (7th Cir. 1983) (same).

While the Court applies the most applicable state statute of limitations, federal law governs the accrual of Lofton's ERISA claim. *Daill,* 100 F.3d at 65. "The general federal common law rule is that an ERISA claim accrues when the plaintiff knows or should know of conduct that interferes with the plaintiff's ERISA rights." *Young,* 615 F.3d at 817. In the context of Section 502(a), a claim "accrues 'upon a clear and unequivocal repudiation of rights under the pension plan which has been made known the beneficiary.'" *Id.* at 816 (*quoting Daill,* 100 F.3d at 66).

In this case, the letter that the Plan sent Lofton in 1988 contained a clear and unequivocal repudiation of her rights under the Plan. It stated that the enclosed check "represents a refund of your contributions plus interest from RSP, as you requested in your Direction of Payment, *and a distribution of the present value of your vested benefits as approved by the Advisory Committee.*" (Def. 56.1, ¶ 22 [emphasis added].) This statement is sufficient to give Lofton notice of any potential claim because it informed her that she was receiving a single lump-sum distribution of her entire vested benefit. *See Thompson v. Ret. Plan for Employees of S.C. Johnson & Son, Inc.,* 651 F.3d 600, 606 (7th Cir. 2011) (holding that a lump-sum distribution coupled with information that no additional benefits would be forthcoming was sufficient to trigger the statute of limitations in a Section 502 case).

Lofton's arguments to the contrary are unavailing. First, Lofton argues that 1988 letter should not trigger the statute of limitations because she "understood the payment made to her in August of 1988 to merely be a refund of her contributions, with additional amounts remaining until

her normal retirement." (Doc. 57 at 5.) In support, she asserts that the "key statement in the August 1, 1988 letter is that the enclosed check 'represents a refund of your contributions plus interest from RSP as you requested in your Direction of Payment.'" (*Id.*) However, she ignores the second half of that same "key statement." Namely, that the enclosed check also represents a "distribution of the present value of [Lofton's] vested benefit." (Def. 56.1, ¶ 22.) The use of the conjunctive "and" clearly informed Lofton that the check represented more than just a refund of her contributions plus interest. Notice that the Plan had distributed her entire vested benefit is sufficient to make her reasonably aware that no future benefits would be forthcoming.

Lofton's reliance on *Young* and *Redmon v. Sud-Chemical Inc.* is similarly misplaced. In *Young,* a claimant alleged that a plan improperly calculated her benefit. *See Young,* 615 F. 3d at 814. The defendant argued that the plaintiff's cause of action accrued when she received her lump-sum benefit payment of $286,095. *Id.* at 816. However, it was not until the administrative claim review process that the plan informed the claimant that it had rejected her interpretation of the plan. *Id*. The Seventh Circuit found that the statute of limitations did not begin to run when the plaintiff received her lump-sum benefit because that payment was "not so inconsistent with her current claim for additional benefits as to serve as a clear repudiation." *Id.* Specifically, in that case, the trustees ignored a scrivener's error in the plan document and distributed lump sums that were smaller than the plan literally prescribed. Conversely here, there was a clear repudiation because the 1988 letter explicitly informed Lofton that while "[p]ayment of [the] vested benefit normally begins at age 65," the Plan was distributing her entire "vested" benefit in a lump-sum payment pursuant to the Small Benefit Provision because it was less than $3,500. (Def. 56.1, ¶ 22.) There was no ambiguity in this

letter that could cause Lofton to reasonably believe that she was entitled to additional benefits. Accordingly, *Young* is not controlling here.

Similarly, *Redmon* does not help Lofton's case. There, the plaintiff argued that a claim for benefits did not accrue until it was formerly denied during the administrative process. *See Redmon v. Sud-Chemical Inc. Ret. Plan for Union Employees,* 547 F.3d 531, 539 (6th Cir. 2008). The Sixth Circuit rejected this argument and held that the defendant's refusal to make additional annuity payments was a clear and unequivocal repudiation of any claim that the plaintiff was entitled to survivor benefits. *Id.* Similarly here, the Plan's clear statement that its 1988 payment represented a payment for Lofton's entire vested benefit was a clear repudiation of her right to any additional benefits. This was sufficient to put her on notice of her claim. Therefore, Lofton's claim is barred by the ten-year statute of limitations for filing ERISA claim under Illinois law.

**II. Denial of Lofton's Claim Was Not Arbitrary and Capricious**

Even if Lofton's claim was not barred by the statute of limitations, summary judgment should still be granted in favor of the Plan because the Plan's decision to deny Lofton's claim was not arbitrary and capricious. A court reviewing a claimant's challenge to a denial of employee benefits under Section 502(a)(1)(B) applies the arbitrary and capricious standard to the plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits. *See Dabertin v. HCR Manor Care, Inc.,* 373 F.3d 822, 827-28 (7th Cir. 2004). The arbitrary and capricious standard of review is "the least demanding form of judicial review of administrative action." *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir. 1997). Under the arbitrary and capricious standard of review, courts "do not ask whether the administrator reached the correct conclusion or even whether it relied on the

proper authority." *Kobs v. United Wis. Ins. Co.,* 400 F.3d 1036, 1039 (7th Cir. 2005). Rather, the only question is whether the administrator's decision was "downright unreasonable." *Dabertin,* 373 F.3d at 828. Whether the Court would have reached the same determination as the plan administrator is irrelevant. *Hess v. Reg-Ellen Machine Tool Corp.,* 423 F.3d 653, 658 (7th Cir. 2005). However, this "deferential standard does not amount to a rubber stamp." *Dabertin,* 373 F. 3d at 828. An administrative committee "must articulate a rational connection between the facts found, the issue to be decided and the choice made." *Id.* If the decision "defies all common sense, [a] district court must overturn that decision." *Id.*

The plan at issue here provides that the Administrative Committee has "the power to interpret or construe the Plan in order to decide any disputes arising hereunder." (Def. 56.1, ¶ 44.) It also states that "[i]n exercising its authority to interpret the Plan, the Committee shall have the maximum discretion allowed by law." (*Id.*) The parties agree that this Court should only overturn the Administrative Committee's decision regarding Lofton's claim if that decision was arbitrary and capricious. (*See* Doc. 55, at 8; Doc. 57, at 7.)

In this case, there is no genuine issue of material fact as to whether the Administrative Committee acted arbitrarily or capriciously in denying Lofton's claim for additional benefits. The Administrative Committee completed a full review and analysis of Lofton's claim in accordance with the applicable claim review procedures. (Def. 56.1, ¶ 51.) The Administrative Committee reviewed the Plan's records, including Lofton's pension records, and all information submitted by Lofton in support of her claim. (*Id.* at ¶ 48.) Lofton has not submitted any evidence to suggest that the Plan's review of her claim did not adhere to the Plan's internal review process or that the Plan failed to consider any relevant evidence. Most importantly, Lofton has failed to set forth any

evidence to suggest that the Plan's determination was incorrect. She concedes that she is not aware of any basis for asserting that either the August 1, 1988 calculation of the present value of her vested benefit or the calculation of the April 2, 1990 payment was inaccurate. (*Id.* at ¶¶ 54-55.) In fact, her response is totally devoid of any argument as to what additional benefits she is entitled to. As a result, the administrative record demonstrates that the Plan's determination was reasonable and there is no basis for this Court to disturb its findings.

Lofton's only argument in response is that the Plan's determination was unreasonable because Lofton's benefits were improperly paid out in a lump-sum pursuant to the $3,500 Small Benefits Provision in the Plan. (Doc. 57, at 7-9.) This provision states that if the actuarial equivalent single sum value of a participant's retirement benefit is $3,500 or less, that benefit shall be paid in one more payments within a year. (Def. 56.1, ¶ 19.) Lofton contends that it was unreasonable to deny her claim for additional benefits pursuant to this provision because her actual benefit was $6,381.54. However, this argument fails for two reasons.

First, Lofton waived this argument by failing to present it during the administrative review process. Because the Court's review of a denial for benefits claim is limited to the record that was presented to the administrative committee, a plaintiff cannot raise issues with this Court that were not first presented to the administrative committee. *See Hess,* 423 F.3d at 662; *see also DeBartolo v. Blue Cross Blue Shield of Ill.,* 375 F. Supp. 2d 710, 714 (N.D. Ill. 2005) (holding that plaintiff could not raise issues with the plan's review of his claim that he failed to raise during the administrative review process). Lofton does not dispute the Plan's assertion that she never told the MIC Retirement Security Plan, the Plan, or the Administrative Committee that the August 1, 1988 calculation of her vested benefit was inaccurate or that the August 1, 1988 payment to her of the

vested benefit in a single lump-sum distribution was improper. (Def. 56.1, ¶¶ 54-55.) She also concedes that she never told the MIC Retirement Security Plan, the Plan or the Administrative Committee that the calculation of the April 2, 1990 payment was not accurate or that the 1990 payment was improper. (*Id.* at ¶¶ 56-57.) Accordingly, Lofton has waived any argument before this Court that it was improper, much less unreasonable, for the Administrative Committee to deny her claim for additional benefits because its determination was based on the fact that she had been paid a lump-sum distribution of all of her vested benefits pursuant to the Small Benefits provision.

Second, even if Lofton had not waived this argument, there is still no basis to find that the Administrative Committee's decision was unreasonable because Lofton has failed to adduce any evidence that she is actually entitled to any more money. She concedes that the present value calculations upon which here benefit payouts were based were accurate and she offers no evidence of any other financial harm. Therefore, Lofton failed to raise a genuine issue of material fact as to whether the Administrative Committee was arbitrary and capricious in its decision to deny her claim for additional benefits. As a result, the Plan is entitled to summary judgment on Lofton's claim.

**CONCLUSION AND ORDER**

For the foregoing reasons, the Court grants the Plan's Motion for Summary Judgment and enters judgment in its favor.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 12, 2012